IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN MILTON, | No. 4:21-CV-01479 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CLINTON COUNTY CORRECTIONAL FACILITY, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**JULY 19, 2022**

Plaintiff Kevin Milton, who is currently in state custody, filed the instant *pro se* Section 1983[1] lawsuit regarding events that allegedly occurred while he was a pretrial detainee at Clinton County Correctional Facility (CCCF), in McElhattan, Pennsylvania. Milton filed his original complaint in August 2021, then filed an amended complaint four months later. Defendants move to dismiss the claims in the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant in part and deny in part Defendants' motions.

**I.    BACKGROUND**

In his amended complaint, Milton alleges that while he was in pretrial detention at CCCF, multiple prison officials violated his constitutional rights. He first asserts

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

that, after being brought to CCCF on January 29, 2021, he was assaulted in the dayroom on February 6, 2021, by a white supremacist gang known as "1488."[2] According to Milton, he was attacked from behind and beaten in the head, back, and torso by multiple gang members for several minutes before CCCF correctional staff intervened.[3]  Milton contends that he was wrongfully accused of fighting, received a 30-day disciplinary sanction, and was placed in segregation near the same gang members who had attacked him.[4]  Milton avers that, during the 16 days he spent in disciplinary segregation, he endured racist verbal abuse and harassment from the gang members, which was so pervasive that CCCF staff had to intercede several times and, ultimately, cut Milton's disciplinary segregation short by two weeks.[5]

Milton asserts that, even when back in his housing unit, he did not feel safe.[6] He alleges that he was threatened often by other inmates inside his housing unit.[7] Milton claims that he sent "numerous requests to the administration" regarding his safety and well-being.[8]  He recalls that a "Captain Young" responded and told Milton he would "handle the situation soon," but that—during the week of May 20, 2021— Milton was assaulted by several inmates again, this time while lying in his bed in his cell.[9]

---

[2]  Doc. 25 at 3 (Milton does not use separate paragraph numbers in his amended complaint, so the Court will refer to the document's page numbers).
[3]  *Id.*
[4]  *Id.*
[5]  *Id.*
[6]  *Id.*
[7]  *Id.*
[8]  Doc. 25 at 3.
[9]  *Id.*

The third assault allegedly occurred on July 9, 2021.[10] According to Milton, he was assaulted once more in his housing unit by multiple inmates without provocation.[11] Milton avers that defendant Lieutenant Rausch then falsified a disciplinary report to indicate that Milton had struck one of the attackers.[12] That charge, however, was dismissed and Milton was removed from disciplinary segregation after just two days because closed-circuit video surveillance footage proved that Milton had not assaulted anyone but rather had been the victim of the attack.[13]

Milton further avers that he complained "to the correctional staff and to the medical department staff on numerous occasions" about the injuries he suffered from the repeated assaults but that adequate medical care was not provided.[14] Milton alleges that he suffered a swollen and split lip, a jaw fracture, loose teeth, headaches and eye aches, pain in the neck and back, as well as cuts, bruises, and abrasions.[15] However, according to Milton, his complaints were met with "total disregard and/or lack of treatment and care."[16]

Milton next contends that, when he filed grievances and staff requests and made it known that he was going to file a federal lawsuit against Defendants, he was met with retaliation in the form of inadequate food and refusal to provide appropriate

---

[10]   *Id.*
[11]   *Id.*
[12]   *Id.*
[13]   *Id.*
[14]   Doc. 25 at 3.
[15]   *Id.*
[16]   *Id.* at 5.

medical treatment.[17]  It appears that Milton is asserting that the medical and food-service Defendants—through their actions or inactions—both created unconstitutional conditions of confinement and retaliated against him for undertaking protected First Amendment conduct.

Milton names as defendants Warden Angela Hoover, Deputy Warden S. Ruch, Captain Ross, Lieutenant Rausch, food service providers Gary Angle and David Houdeshell, and medical providers Kira Munro and Thomas Laniar.[18]  He asserts that Defendants violated his Fourteenth Amendment rights by detaining him in unconstitutional conditions of confinement, failing to protect him from inmate assaults, and failing to provide adequate medical care.  He further alleges that Defendants violated his First Amendment rights by retaliating against him for undertaking protected conduct.  Finally, Milton claims that Defendants are liable for civil conspiracy under Pennsylvania law.[19]

All Defendants except Laniar have filed motions to dismiss Milton's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[20]  Those motions are ripe for disposition.

---

[17]  *Id.* at 4-5.
[18]  *See* id. at 2.  The Court notes that defendant Thomas Laniar was served by U.S. Marshal on April 4, 2022.  *See* Doc. 78.  To date, Laniar has failed to respond to Milton's amended complaint in any way.  *See* FED. R. CIV. P. 12(a).
[19]  *See* Doc. 25 at 7 (citing *Sullivan v. Rankin*, No. 1:16-cv-2546, 2017 WL 4544619, at *9 (M.D. Pa. Sept. 29, 2017) (applying Pennsylvania law)).
[20]  *See generally* Docs. 31, 69, 74.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[21]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[22]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[23]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[24]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[25]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[26]  Finally, the court must review the presumed-truthful allegations "and

---

[21]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[22]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[23]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[24]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[25]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[26]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

then determine whether they plausibly give rise to an entitlement to relief."[27] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[28]

Because Milton proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[29] This is particularly true when the *pro se* litigant, like Milton, is incarcerated.[30]

## III. DISCUSSION

At the outset, the Court observes that Milton has failed to delineate which constitutional tort claims are directed at which Defendants. As discussed in more depth below, Milton exacerbates this problem by failing to allege personal involvement for many of the named Defendants.

Immediately, the Court must dismiss any conspiracy claims under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. Milton lists these statutory provisions on the first page of his amended complaint in conclusory fashion but fails to develop them in any way. In the only section related to conspiracy, Milton alleges that Defendants are liable for civil conspiracy under Pennsylvania law. Thus, any claims under Sections 1985 and 1986 must be dismissed.[31]

---

[27] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[28] *Iqbal*, 556 U.S. at 681.
[29] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[30] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[31] *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (explaining that courts must "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all")

Milton's amended complaint, liberally construed, appears to raise three types of Fourteenth Amendment[32] violations: failure to protect, deliberate indifference to serious medical needs, and unconstitutional conditions of confinement. He also asserts a First Amendment retaliation claim and the aforementioned state-law civil conspiracy claim. There are pleading deficiencies with nearly all of Milton's causes of action.

### A.   Failure to Protect

Following the United States Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the United States Court of Appeals for the Third Circuit has not yet addressed in a precedential opinion whether the standard for alleging a Fourteenth Amendment failure-to-protect claim differs from such a claim raised under the Eighth Amendment. In *Kingsley*, the Supreme Court held that, for a pretrial detainee to prove an excessive force claim under the Fourteenth Amendment, he must show that the officers' use of force was *objectively* unreasonable, not that the

---

(quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)). Milton also lists Section 1988 on the front page of his complaint, but again does not develop this claim at all. Section 1988(b) permits a court to award reasonable attorney's fees to the prevailing party in a civil rights action. *See* 42 U.S.C. § 1988(b). However, it is well settled that *pro se* litigants may not recover attorney's fees under Section 1988. *See Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir. 1982).

[32]  Because Milton alleges he was a pretrial detainee during the time in question, his claims of failure to protect, inadequate medical care, and conditions of confinement must be analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition on cruel and unusual punishment. *See Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (*Hubbard I*). Stated differently, "sentenced prisoners are protected from punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment." *Paulino v. Burlington Cnty. Jail*, 438 F. App'x 106 (3d Cir. 2011) (nonprecedential) (citing *Hubbard I*, 399 F.3d at 166-67).

officers were *subjectively* aware that their use of force was unreasonable.[33] After *Kingsley*, the Third Circuit—albeit in nonprecedential opinions—has continued to apply the Eighth Amendment deliberate indifference standard to pretrial detainee failure-to-protect claims.[34]

Thus, to state a failure-to-protect claim against a prison official, a pretrial detainee or convicted prisoner must plausibly plead that "(1) he was incarcerated [or detained] under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the plaintiff's] health and safety, and (3) the official's deliberate indifference caused [the plaintiff] harm."[35] In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[36] Actual knowledge or awareness of a substantial risk to an inmate's or detainee's safety can be proven "in the usual ways, including inference from circumstantial evidence."[37]

Milton's amended complaint fails to state a failure-to-protect claim because he does not plausibly plead that any named Defendant was deliberately indifferent to a

---

[33] *Kingsley*, 576 U.S. at 392; *see also Jacobs v. Cumberland County*, 8 F.4th 187, 194 (3d Cir. 2021) (acknowledging holding of *Kingsley* and its effect on Fourteenth Amendment excessive force claims).

[34] *See Tapp v. Brazill*, 645 F. App'x 141, 146 n.5 (3d Cir 2016) (nonprecedential) (citing *Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014)); *see also Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (nonprecedential) (citing *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1024 (3d Cir. 1991)).

[35] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[36] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

[37] *Id.* (quoting *Farmer*, 511 U.S. at 842).

substantial risk of serious harm. Milton alleges that he "made it known to the unit officer" of his housing unit and to "the administration" that he felt unsafe after the first attack, and he additionally asserts that he received a response from "Captain Young" that Young would "handle the situation soon."[38] Milton, however, does not identify who the unit officer was or who comprised the "administration" and purportedly was put on notice by Milton's complaints. Nor did Milton sue Young. Consequently, none of Milton's failure-to-protect allegations implicate any of the named Defendants, so Milton has failed to plausibly allege that these specific prison officials knew about the prior assaults or acted with deliberate indifference to an excessive risk to Milton's safety.[39] This claim, therefore, must be dismissed, but leave to amend will be granted because Milton may be able to cure this deficiency.

### B. Deliberate Indifference to Serious Medical Needs

The same issue regarding pretrial detainees and Fourteenth Amendment standards following *Kingsley* arises with Milton's claim of inadequate medical care. Again, however, it does not appear that the Third Circuit has established or adhered to a different standard with respect to pretrial detainee medical indifference claims versus those raised by incarcerated individuals.[40] Accordingly, the Court will apply

---

[38] Doc. 25 at 3.

[39] Alternatively, it could be said that Milton has failed to properly plead personal involvement by Defendants in the alleged constitutional violation. *See Dooley*, 957 F.3d at 374.

[40] *See Moore v. Luffey*, 757 F. App'x 335, 340 & n.2 (3d Cir. 2019) (nonprecedential) (rejecting plaintiff's argument to apply *Kingsley*'s holding to Fourteenth Amendment medical care claim and instead analyzing under Eighth Amendment jurisprudence); *see also Parker v. Butler County*, 832 F. App'x 777, 780 & n.1 (3d Cir. 2020) (nonprecedential) (applying Eighth Amendment standard to pretrial detainee medical care claim while acknowledging Fourteenth Amendment is source of right); *Miller v. Steele-Smith*, 713 F. App'x 74, 76 n.1, 78 (3d Cir.

existing Eighth Amendment jurisprudence to Milton's Fourteenth Amendment medical indifference claims.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[41]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly plead "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[42]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[43]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[44] Deliberate indifference to serious medical needs is an exacting standard, requiring a

---

2017) (nonprecedential) (same); *Goode v. Giorla*, 643 F. App'x 127, 129 & n.3 (3d Cir. 2016) (nonprecedential) (same); *Edwards*, 663 F. App'x at 136-37 (citing *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).
[41] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[42] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[43] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[44] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

showing of "unnecessary and wanton infliction of pain."[45]  Claims sounding in mere medical negligence will not suffice.[46]

    Milton's medical indifference claims are deficient as well.  He repeatedly alleges that he was denied "adequate and essential medical care and treatment" by CCCF "staff" or "medical department staff" without explaining how his treatment was inadequate or who was responsible for the constitutional violations.[47]  The only place in Milton's amended complaint where any prison official is identified in relation to his medical claims is in the qualified immunity section, where Milton states that "Medical Officers K. Munro[] and T. Laniar[] have refused to provide adequate and essential medical care and treatment" to him.[48]  This type of broad, conclusory pleading does not meet the requirements of *Twombly* and *Iqbal*.  Milton does not allege facts that would establish the high bar of "unnecessary and wanton infliction of pain" required for a medical care claim against Munro or Laniar (or any other named Defendant).  Certainly, refusal to provide *any* medical treatment for the injuries Milton claims he sustained could plausibly state a medical indifference claim, but that is not what Milton alleges.  Consequently, Milton's Fourteenth Amendment medical indifference claim must be dismissed, but leave to amend will be granted.[49]

---

[45]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[46]  *Rouse*, 182 F.3d at 197.
[47]  *See, e.g.*, Doc. 25 at 3, 4, 5, 7.
[48]  *Id.* at 7.
[49]  The Court observes that, in his later motion to amend, Milton provides extensive allegations regarding Munro's alleged medical indifference.  *See* Doc. 84 at 1-3.  These detailed allegations—if included in a future amended pleading—could potentially state a Fourteenth Amendment claim of deliberate indifference to serious medical needs against Munro.  The

### C.     Conditions of Confinement

When a pretrial detainee asserts a conditions-of-confinement claim, the Due Process Clause of the Fourteenth Amendment requires courts to consider "first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes."[50]  If pretrial detainees are subjected to conditions that are not reasonably related to a legitimate governmental objective, an inference may be made that the purpose of the prison official's action is punishment.[51]  Thus, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."[52]  As the Third Circuit instructs, courts confronted with a Fourteenth Amendment conditions-of-confinement claim must "consider the totality of the circumstances of confinement."[53]

The gravamen of Milton's conditions-of-confinement claim appears to be that he was denied adequate or diet-appropriate food on numerous occasions.[54]  Milton

---

allegations against Laniar in the motion to amend, on the other hand, sound only in *respondeat superior* and thus would not state a claim.  See *id.* at 3.

[50] *Hubbard II*, 538 F.3d at 232 (quoting *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983)).
[51] *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020).
[52] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).
[53] *Hope*, 972 F.3d at 326 (citing *Hubbard I*, 399 F.3d at 159-60).
[54] *See* Doc. 25 at 1 (alleging failure to provide adequate "medical care" and "food," and failure to protect).  Although Milton also appears to refer to denial of medical care as an unconstitutional condition of confinement, such a claim is more appropriately analyzed under

alleges that he is diabetic and is on a "heart healthy food diet with no soy."[55] He claims that the food service department was aware of these dietary restrictions yet served him inappropriate or insufficient meals on at least 32 separate occasions.[56] He asserts that this caused him to "go hungry or solely rely upon the commissary food stuffs" he purchased on his own.[57] Milton further claims that there was no legitimate penological reason for these actions, but instead that they were intended as retaliation for his First Amendment conduct. Presumably, this claim is leveled at the food-service Defendants—Houdeshell and Angle.[58]

Milton has plausibly stated a Fourteenth Amendment conditions-of-confinement claim against Houdeshell and Angle. His allegations, taken as true, infer that he was repeatedly denied medically necessary meals for no legitimate reason, which raises an inference of punishment under the Fourteenth Amendment. Specifically, he alleges that Houdeshell and Angle "repeated[ly] refused to provide adequate meals that are medically required for [his] dietary and health specific needs

---

its own Fourteenth Amendment cause of action. Lastly, in the qualified immunity section of his amended complaint, Milton avers that Ruch, Ross, and Rausch failed to provide "safe and adequate housing and shelter (constant unit and cell flooding from the sewer drains, lack of ventilation in the Housing Unit Quarters, no Fire Sprinklers in the Housing Unit Quarters)[.]" *Id.* at 7. Milton does not develop these conclusory allegations or explain how Ruch, Ross, and Rausch were personally involved in their creation, nor does he explain the extent of the conditions or how the conditions affected him. Nevertheless, because leave to amend is being granted, Milton may, if he is able, amend his pleadings to show how Ruch, Ross, and Rausch were personally involved in causing or perpetuating these alleged conditions of confinement (beyond mere *respondeat superior* liability), the extent of the conditions, how they affected Milton, and how they rose to the level of punishment under the Fourteenth Amendment.

[55] Doc. 25 at 5.
[56] *Id.*
[57] *Id.* at 7.
[58] *See id.*

13

(diabetic and food allergies), in spite of numerous requests (electronic and verbal) from both [Milton] and correctional staff at this facility[.]"[59] Milton likewise asserts that Houdeshell was aware of these conditions and acted with deliberate indifference toward them.[60] Milton's Fourteenth Amendment conditions-of-confinement claim against Houdeshell and Angle, therefore, can withstand Defendants' Rule 12(b)(6) challenge.

### D.  Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[61] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[62]

All Defendants except Munro and Laniar challenge the final prong: causation. Munro asserts lack of personal involvement, while Laniar—as previously noted—has

---

[59] *Id.*
[60] *See id.* at 5 (alleging that Houdeshell responded to one of Milton's many complaints by stating, "[T]ell him to eat commissary!").
[61] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).
[62] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

14

not responded to Milton's amended complaint.

Milton argues that the "adverse actions" taken by prison officials were the other Fourteenth Amendment violations. His argument is confusing because he appears to simultaneously claim that (a) the adverse actions (the unconstitutional conditions of confinement, lack of medical care, etc.) existed *before* he filed the grievances and were the impetus for his grievances, and (b) the adverse actions (the unconstitutional conditions of confinement, lack of medical care, etc.) were the retaliatory *result* of the grievances he filed. Nevertheless, because Milton is permitted to plead in the alternative,[63] the Court will examine whether Milton has plausibly alleged causation.

Milton alleges that he filed a total of 109 "requests" to the staff of CCCF beginning in March 2021 and continuing through November 2021.[64] He appears to assert that, once he started filing his "grievances and complaints" and the instant civil lawsuit, "he start[ed] having problems with his daily meals."[65] He also alleges that the lack of medical treatment "start[ed] after [he] beg[an] to file his grievances and continue[d] once it [was] known that he ha[d] engaged in a civil action against the facility and staff."[66] These statements lack any factual basis explaining how Defendants had knowledge of Milton's protected activity such that it would be a substantial or motivating factor in their allegedly retaliatory conduct.[67]

---

[63] *See* FED. R. CIV. P. 8(d)(2), (3).
[64] Doc. 25 at 5.
[65] *Id.*
[66] *Id.*
[67] At one point in his amended complaint, Milton alleges that he had "made known that he was going to initiate a Federal Civil Action against the prison and the defendants," Doc. 25 at 4, but this statement does not include facts about how any Defendant was informed or when that

The only portion of Milton's amended complaint that plausibly alleges causation appears under the qualified immunity heading, where he states that Houdeshell's and Angle's repeated refusals to provide adequate meals "correspond with complaints and grievances filed," which Milton contends is "clearly retaliation against" him.[68]  As for Munro, she is correct that Milton's amended complaint does not allege that she was personally involved in the retaliation, nor does it plausibly plead causation for her.

Milton's retaliation claim, as it currently exists, survives only as to Houdeshell and Angle.  Leave to amend will be granted, however, because it is possible that Milton could cure the noted deficiencies as to other Defendants.

E.   **State-Law Civil Conspiracy**

Milton argues that all Defendants conspired to violate his civil rights by punishing him in an effort to "coerce or induce him to stop filing his grievances" and taking other "legal measures."[69]  Stated more succinctly, Milton is asserting that Defendants conspired to violate his First Amendment rights and thus committed the state tort of civil conspiracy.

Under Pennsylvania law, to state a claim for civil conspiracy, a plaintiff must plausibly allege "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.  Proof of malice,

---

knowledge was imparted by Milton in relation to the timing of the adverse actions.  In sum, this single statement is too vague to plausibly show a causal connection for any Defendant.
68   *Id.* at 7.
69   *Id.*

16

*i.e.*, an intent to injure, is essential in proof of a conspiracy."[70]

Defendants argue that Milton's threadbare recitals do not set forth a plausible conspiracy claim. Defendants are correct. Milton must do more than simply state that Defendants "conspired" or "acted in concert" to violate his First Amendment rights.[71] A plaintiff asserting a claim for civil conspiracy must aver "material facts which will either directly or inferentially establish [the] elements of conspiracy."[72] Mere conclusory allegations stating that there was a "conspiracy" or "an agreement to act unlawfully" will not suffice.[73]

Milton's allegations are conclusory and lack any factual averments regarding an agreement or common plan between Defendants. Accordingly, the state-law civil conspiracy claim must be dismissed as to all Defendants.

### F. Official Capacity Claim

Milton sues one Defendant—Hoover—in her official capacity.[74] This official capacity claim cannot withstand Rule 12(b)(6) scrutiny, however, because Milton fails to identify a policy or custom by Clinton County that violated his constitutional rights.

---

[70] *Skipworth by Williams v. Lead Industries Ass'n*, 690 A.2d 169, 174 (Pa. 1997) (citation omitted).
[71] *See* Doc. 25 at 7.
[72] *Brown v. Blaine*, 833 A.2d 1166, 1173 (Pa. Commw. Ct. 2003) (citation omitted).
[73] *See id.*; *see also Brown v. Everett Cash Mut. Ins. Co.*, 157 A.3d 958, 967-68 (Pa. Super. Ct. 2017) (explaining that "bald assertions of conspiracy are insufficient to properly plead civil conspiracy; [a] plaintiff must set forth facts supporting [the] existence of a conspiracy that would suggest [a] common plan or scheme" to act unlawfully (citation omitted)).
[74] *See id.* at 2.

An official capacity claim against a prison official is akin to suing the "entity of which [the] officer is an agent."[75] Here, that entity is Clinton County, a "local government unit."[76] To assert a Section 1983 claim against Clinton County, Milton must identify a policy or custom emanating from this entity that caused him constitutional injury.[77] Milton's amended complaint does not do so. Consequently, the official capacity claim against Hoover must be dismissed.

## IV.  LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[78] Milton, in fact, has sought leave to file a second amended complaint.[79] His proposed second amended complaint, however, does not address many of the deficiencies identified herein. That document, moreover, contains extensive legal argument, which is not required at the pleading stage.

The Court will permit Milton to file a second amended complaint in accordance with the foregoing discussion. Milton, if able, may amend some or all of the claims that are being dismissed.

If Milton chooses to file a second amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without

---

[75] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).
[76] *Id.* at 690.
[77] *Id.* at 690-91.
[78] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).
[79] *See* Doc. 84.

reference to any previous pleadings. The second amended complaint should set forth *all* Milton's claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Milton must include every claim that he intends to pursue—even those that survived Defendants' motions to dismiss—and should identify which claim is being asserted against which defendant (or defendants). Milton must also name proper defendants, specify the offending actions taken by a particular defendant, sign the second amended complaint, and indicate the nature of the relief sought.

If, on the other hand, Milton chooses not to amend his pleadings, his case will proceed on his Fourteenth Amendment conditions of confinement claim and his First Amendment retaliation claim. As it currently stands, those two claims would implicate defendants Houdeshell and Angle only.

## V. CONCLUSION

Based on the foregoing, the Court will grant the motions to dismiss (Docs. 31, 74) by defendants Hoover, Ruch, Ross, Rausch, and Munro. The Court will grant in part and deny in part the motion to dismiss (Doc. 69) by defendants Houdeshell and Angle, as specified herein. The claims against defendant Laniar will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Leave to amend will be granted. An appropriate Order follows.

                                         BY THE COURT:

                                         *s/ Matthew W. Brann*
                                         Matthew W. Brann
                                         Chief United States District Judge