## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN MILTON, | No. 4:21-CV-01479 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| ANGELA HOOVER, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

### DECEMBER 5, 2023

Plaintiff Kevin Milton, who is currently in federal custody, filed the instant *pro se* Section 1983[1] lawsuit in 2021 regarding events that allegedly occurred while he was a pretrial detainee at Clinton County Correctional Facility (CCCF), in McElhattan, Pennsylvania.  His claims have been winnowed to a Fourteenth Amendment claim and a First Amendment claim against two CCCF food service providers, the only remaining Defendants in this case.  Presently pending is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Because Milton fails to carry his summary judgment burden on his remaining constitutional tort claims, the Court will grant Defendants' Rule 56 motion.

---

[1]  42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

# I.      FACTUAL AND PROCEDURAL BACKGROUND[2]

This case includes a complicated procedural background, a review of which is necessary to understand the current posture of the remaining claims and defendants. In August 2021, Milton initiated this lawsuit by suing CCCF and two of its officials (Warden Angela Hoover and Lieutenant Rausch), alleging various constitutional violations.[3]  Those defendants moved to dismiss his complaint and, in response, Milton filed an amended complaint as a matter of course, which remains the operative pleading in this litigation.[4]  In his amended complaint, Milton named eight defendants, claiming unconstitutional conditions of confinement, failure to protect, deliberate indifference to serious medical needs, and retaliation.[5]  The named defendants were: Warden Angela Hoover, Deputy Warden S. Ruch, Captain Ross, Lieutenant Rausch, medical providers Kira Munro and Thomas Laniar, and food service providers Gary Angle and David Houdeshell (incorrectly identified by Milton as "Howie").[6]

---

[2]    Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Defendants filed their statement of material facts, (Doc. 120), but Milton failed to respond to that statement.  Accordingly, the Court will deem admitted the facts in Defendants' Rule 56.1 statement.  *See* LOCAL RULE OF COURT 56.1.

[3]    *See generally* Doc. 1.

[4]    *See generally* Doc. 25.

[5]    *See generally* Doc. 25; *see* Doc. 88 at 2-4.

[6]    *See* Doc. 25 at 1, 2; Doc. 88 at 4.

All Defendants except Laniar moved to dismiss Milton's amended complaint.[7] After nearly seven months of litigation concerning the motions to dismiss, the Court issued a lengthy Memorandum[8] and Order[9] on July 19, 2022, resolving those pending motions.  As the Court explained, Milton's amended complaint failed to delineate which constitutional tort claims were directed at which Defendants and additionally failed to allege personal involvement for many of the named Defendants.[10] Ultimately, the Court determined that Milton's amended complaint contained numerous pleading deficiencies affecting nearly all his causes of action.

The Court need not rehash those determinations, as they are set forth in detail in the July 19 Memorandum.[11]  Suffice it to say that, when the dust settled, the only claims that survived Defendants' motions to dismiss were Milton's Fourteenth Amendment conditions-of-confinement claim and First Amendment retaliation claim against food service defendants Houdeshell and Angle (hereinafter "Defendants").[12]

Although most of Milton's claims were dismissed, the Court granted him leave to amend, providing 21 days—or until August 9, 2022—in which to file a second amended complaint.[13]  Three days later, on July 22, 2022, the Court—having independently learned that Milton had been moved from SCI Smithfield to Dauphin

---

[7]   *See* Docs. 31, 69, 74.
[8]   Doc. 88.
[9]   Doc. 89.
[10]   Doc. 88 at 6.
[11]   *See id.* at 6-18.
[12]   *See id.* at 19.
[13]   *See* Doc. 89 at 2 ¶ 5.

County Prison based on his *pro se* filings in his criminal case in this district, docket number 4:20-CR-00288—*sua sponte* remailed the July 19 Memorandum and Order to Milton at Dauphin County Prison.[14]  Two weeks later, on August 5, 2022, this Court received correspondence from Milton (dated August 1, 2022) indicating that his address had recently changed from Dauphin County Prison to "Philadelphia FDC, 700 Arch Street, Philadelphia, Pennsylvania 19106."[15]  Erring on the side of caution, the Court remailed the July 19 Memorandum and Order to Milton's new address.[16]

On August 30, 2022, Defendants filed an answer to the amended complaint, which was served on Milton that day via first-class mail at the appropriate Philadelphia FDC address.[17]  After waiting a month beyond the original August 9, 2022 amendment deadline, remailing the July 19 decision twice, and still not receiving a second amended complaint or request for enlargement of time from Milton, the Court issued a follow-up Order on September 9, 2022.[18]  That Order specified that, because Milton had failed to file a second amended complaint or any other communication, his case would "proceed on the following Section 1983 claims: Fourteenth Amendment conditions of confinement and First Amendment retaliation against defendants Houdeshell and Angle only."[19]

---

[14]  *See* Docket Annotation following Doc. 90.
[15]  Doc. 92.
[16]  *See* Docket Annotation following Doc. 95.
[17]  Doc. 96; *id.* at 24.
[18]  Doc. 97.
[19]  *Id.* at 1 ¶ 1 (citing Doc. 89 at 2 ¶ 6).

On September 29, 2022, the July 19 Memorandum and Order sent to Milton at FDC Philadelphia were returned as undeliverable and unable to forward.[20] Five days later, the September 9, 2022 Order sent to Milton at FDC Philadelphia was likewise returned as undeliverable and unable to forward.[21] The Clerk of Court, utilizing the Federal Bureau of Prisons online inmate locator tool,[22] determined that Milton had been transferred to the Federal Correctional Institution in Loretto, Pennsylvania (FCI Loretto). That same day, the Clerk remailed the September 9 Order to Milton at FCI Loretto.[23] The Court additionally notes that the July 19 Memorandum and Order remailed to Milton at Dauphin County Prison on July 22, 2022, were never returned as undeliverable, indicating that delivery was in fact made to Milton at that facility.

On October 13, 2022, the Court received a letter from Milton that contained numerous misconceptions and spurious allegations.[24] Milton accused the Court of intentionally sending documents to the "wrong address" and transferring him to different prisons to "try to dismiss" his case.[25] The Court corrected each of Milton's baseless accusations (and warned him against making such specious claims in the future), granted him additional time to file a second amended complaint, and advised him that if no second amended complaint were filed, the case would proceed on his Fourteenth Amendment conditions-of-confinement and First Amendment retaliation

---

[20] Doc. 99.
[21] Doc. 100.
[22] *See* https://bop.gov/inmateloc/.
[23] *See* Doc. 100 (annotation within docket entry).
[24] Doc. 101.
[25] *See* Doc. 102 at 5-6 (quoting Doc. 101).

claims against defendants Houdeshell and Angle only, as previously ordered.[26]  The Court also sent him another courtesy copy of its July 19, 2022 Memorandum and Order.[27]

On November 16, 2022, the Court received a request from Milton seeking an additional extension of time to file a second amended complaint.[28]  In that request, Milton acknowledged the November 25, 2022 due date established by this Court's October 25, 2022 Memorandum Opinion and Order, thereby confirming receipt thereof.[29]  The Court once again granted Milton an extension of time to file his second amended complaint, giving him an additional *45 days* to do so.[30]

On December 29, 2022, the Court received yet another request for an enlargement of time from Milton.[31]  The Court once more granted Milton's request but warned that no further extensions would be granted absent exceptional circumstances.[32]  Milton thus had until January 20, 2023, to file his second amended complaint,[33] even though that pleading was originally due in August 2022.[34]

Instead of filing his second amended complaint, Milton sought a fourth extension from the Court.[35]  The Court granted Milton's request, setting a new

---

[26]  *See id.* at 5-7.
[27]  *See id.* at 7 ¶ 3.
[28]  Doc. 103.
[29]  *See id.*
[30]  *See* Doc. 104.
[31]  Doc. 105.
[32]  *See* Doc. 106.
[33]  *See id.* ¶ 1.
[34]  *See* Doc. 89 at 2 ¶ 5.
[35]  *See* Doc. 107.

pleading deadline of February 10, 2023, and warned Milton that no further extensions would be granted.[36]   That February 10 deadline came and went without Milton filing a second amended complaint.[37]   The Court thus issued a case management order regarding discovery and dispositive-motion deadlines for the claims against Houdeshell and Angle.[38]

Defendants now move for summary judgment on all remaining claims.[39]   As noted above, Milton has failed to respond to Defendants' statement of facts, which are therefore deemed admitted.[40]   Defendants' Rule 56 motion is fully briefed and ripe for disposition.

---

[36]   *See* Doc. 109 at 1 ¶¶ 1-2.
[37]   Milton filed a "motion to amend," which was dismissed as moot primarily because he had already been granted leave to amend on numerous occasions.  *See* Docs. 110, 112.
[38]   *See* Doc. 112 at 2 ¶¶ 2-3.
[39]   Doc. 118.
[40]   *See* LOCAL RULE OF COURT 56.1.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[41]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[43]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[44]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[45]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[46]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the

---

[41]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[42]   FED. R. CIV. P. 56(a).

[43]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[44]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[45]   *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[46]   *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[nonmovant]."[47]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[48]

## III.  DISCUSSION

Defendants contend that Milton is unable to meet his Rule 56 burden because he cannot adduce any competent evidence to establish a genuine issue of material fact as to his remaining constitutional tort claims.  The Court agrees.

### A.  Fourteenth Amendment Conditions of Confinement

When a pretrial detainee asserts a conditions-of-confinement claim, the Due Process Clause of the Fourteenth Amendment requires courts to consider "first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes."[49]  If pretrial detainees are subjected to conditions that are not reasonably related to a legitimate governmental objective, an inference may be made that the purpose of the prison official's action is punishment.[50]  Thus, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive

---

[47]  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[48]  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

[49]  *Hubbard II*, 538 F.3d at 232 (quoting *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983)).

[50]  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020).

government purpose, or when the restriction is excessive in light of that purpose."[51]

As the Third Circuit instructs, courts confronted with a Fourteenth Amendment

conditions-of-confinement claim must "consider the totality of the circumstances of

confinement."[52]

Milton has failed to carry his burden at summary judgment because he has not

identified any record evidence that would rebut Defendants' contention (and

supporting evidence) that no unconstitutional conditions of confinement existed with

regard to food service at CCCF. Milton has not, for example, pointed to a declaration

or affidavit, medical records, witness statements, or any other evidence that could

sustain a verdict in his favor. He simply relies on his bald allegations that Defendants

failed to comply with an unidentified physician's order that Milton was to receive "a

special diabetic . . . and no soy diet."[53]

At summary judgment, however, "the non-moving party must oppose the

motion and, in doing so, may not rest upon the mere allegations or denials of his

pleadings but, instead, must set forth specific facts showing that there is a genuine

issue for trial. Bare assertions, conclusory allegations, or suspicions will not

suffice."[54] Moreover, "[t]he court need consider only the cited materials" when ruling

---

[51] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

[52] *Hope*, 972 F.3d at 326 (citing *Hubbard I*, 399 F.3d at 159-60).

[53] Doc. 122 at 1.

[54] *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (alteration omitted) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)).

on a motion for summary judgment.[55]  No materials have been provided or cited by Milton in opposition to Defendants' Rule 56 motion.

The Court additionally notes that, because Milton has failed to comply with Local Rule 56.1, Defendants' statements of fact regarding food service at CCCF are deemed admitted.[56]  Upon admission by Milton of these material facts and with no countervailing evidence, it follows that Milton cannot succeed on his conditions-of-confinement claim.

The undisputed facts establish that, among other things, (1) Angle was employed by Aramark as the "Food Services Director" at CCCF;[57] (2) Aramark—which contracts with CCCF for prison food service—utilizes a specially designed menu for diabetic prisoners that includes a medically recommended diabetic diet with appropriate protein, carbohydrate, fat, and vitamin levels in all meals; (3) such diets comport with the guidelines provided by the American Diabetes Association and the American Correctional Association; (4) the nutritional content of meals provided at CCCF "is continually monitored and tested by Aramark personnel in manners consistent with accepted nutrition and dietary practices"; (5) meal service at CCCF "exceeds the minimum requirements as to both calories and protein, and reflects a well-rounded and nutritional meal service"; and (6) Aramark prepares all meals

---

[55]  FED. R. CIV. P. 56(c)(3).
[56]  *See* LOCAL RULE OF COURT 56.1.
[57]  Doc. 120-3 ¶ 3.

pursuant to the rules and regulations governing CCCF.[58]  Additionally, neither

Houdeshell or Angle ever "physically interacted" with Milton, nor has Milton

produced evidence that Defendants had the express intent to punish him through

inappropriate diabetic meal service.[59]  There is simply no evidence that Milton's

pretrial conditions of confinement with regard to food service at CCCF amounted to

"punishment" and violated the Fourteenth Amendment.

Thus, because Milton has failed to establish that there is a genuine issue for

trial, the Court is constrained to grant Defendants' motion for summary judgment as

to this Fourteenth Amendment claim.

### B.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an

inmate still retains First Amendment protections when they are "not inconsistent"

with prisoner status or with the "legitimate penological objectives of the corrections

system."[60]  To establish a First Amendment retaliation claim, a prisoner must show

that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an

"adverse action" by prison officials sufficient to deter a person of ordinary firmness

from exercising his First Amendment rights, and (3) the inmate's protected conduct

---

[58]   Doc. 120 ¶¶ 10-22.

[59]   *Id.* ¶¶ 23-24.

[60]   *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[61]

Milton's First Amendment claim fails for reasons similar to his Fourteenth Amendment claim. Milton has not provided or pointed to *any* evidence that would support the elements of his prima facie retaliation case. In fact, he does not even address this First Amendment claim in his briefing.[62]

At the motion to dismiss stage, the Court noted that Milton's retaliation allegations suffered from logical inconsistencies. That is, Milton "appear[ed] to simultaneously claim that (a) the adverse actions (the unconstitutional conditions of confinement, lack of medical care, etc.) existed *before* he filed the grievances and were the impetus for his grievances, and (b) the adverse actions (the unconstitutional conditions of confinement, lack of medical care, etc.) were the retaliatory *result* of the grievances he filed."[63] The Court liberally construed Milton's *pro se* amended complaint as "plead[ing] in the alternative" and found that he had alleged a retaliation claim against Defendants.[64]

This, however, is not the motion-to-dismiss stage, and Milton must do more to survive Defendants' Rule 56 challenge. Yet Milton has not adduced any evidence that he was retaliated against by Defendants through deficient food service in response to

---

[61] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[62] *See generally* Doc. 122.
[63] Doc. 88 at 15.
[64] *See id.* at 15-16 & n.63.

filing prison grievances.[65]  In fact, because Milton has not established that the food he received at CCCF was nutritionally inappropriate, let alone constitutionally violative, he has not demonstrated that Defendants took an adverse action against him.

Milton, moreover, has not established causation.  As Defendants correctly observe, Milton has failed to adduce any evidence demonstrating that his alleged protected conduct (*i.e.*, filing grievances) was a substantial or motivating factor in Defendants' purportedly unconstitutional food service.

Without offering proof of an adverse action or retaliatory animus, Milton's First Amendment claim cannot survive Rule 56 scrutiny.  Summary judgment, therefore, must be granted in Defendants' favor on Milton's retaliation claim as well.

## IV.   CONCLUSION

Based on the foregoing, the Court must grant Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[65]   To the extent that Milton asserts that the protected First Amendment conduct included filing the instant lawsuit in which he alleges retaliation, such a claim is implausible.  The only way Defendants could have retaliated against Milton for his federal lawsuit before he filed the instant amended complaint (naming them, for the first time, as defendants) would be if Defendants somehow had advance knowledge that Milton was going to file an amended complaint lodging constitutional tort claims against them.  Milton has not alleged, much less proffered supporting evidence, that this was the case.